Filed 5/8/15  Walsh v. PNC Bank CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| LILIYA WALSH, | C074145 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0029123) |
| v. | |
| PNC BANK et al., | |
| Defendants and Respondents. | |

Here, a defaulting homeowner who has failed to tender loan payments seeks to set aside a nonjudicial foreclosure sale.  Plaintiff Liliya Walsh (Walsh) sued, inter alia, respondents PNC Bank, successor by merger with National City Bank of Indiana etc., Litton Loan Servicing, LP, and MTGLQ Investors, LP (MTGLQ) (collectively Litton), seeking rescission of the foreclosure sale, damages, and ancillary relief.  The trial court

1

sustained without leave to amend demurrers filed by all respondents to her first amended complaint. Walsh timely appealed from the judgments of dismissal.[1] We shall affirm.

## FACTS

Our statement of facts takes as true "the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken" (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111) but ignores "deductions or conclusions of law" in the complaint (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967).

Walsh co-owned her home in Meadow Vista with Peter Walsh. Two deeds of trust had been recorded on the property, in 2005 and 2006, but the originator "became inactive" and was acquired by another respondent herein, and Walsh alleged neither deed of trust accurately reflected the underlying loans. The loans were "securitized" by respondents. Multiple assignments of the loans were made, without Walsh's knowledge or consent. The amounts of the loans are not pleaded, but Walsh does not claim that she was *not* the original borrower of the underlying loans.

In 2008, Cal-Western Reconveyance Corporation (Cal-Western) recorded a Notice of Default and Notice of Trustee Sale, acting as a trustee. According to Walsh, Cal-Western was not actually trustee "of record" pertaining to the loan, and defendants failed to demonstrate that the "true owner" assigned the rights to any defendant purporting to be in the chain of assignments. Walsh disputed both the default and amount of default stated by Cal-Western. Per Walsh, the subsequent Notice of Trustee Sale recorded by Cal-

---

[1] As to some respondents, the trial court merely sustained the demurrer without leave to amend, while as to others the trial court also included language dismissing the case. An order sustaining a demurrer is not appealable. (See Code Civ. Proc., § 904.1.) But no party raises this point, and we deem the technically incomplete order to incorporate a dismissal, to effectuate the trial court's intent. (See *Lumpkin v. Jordan* (1996) 49 Cal.App.4th 1223, 1225-1226, fn. 1.)

Western, signed by an agent of "First American," an unidentified entity, incorrectly stated the balance due.

Litton foreclosed on Walsh's home. Before the foreclosure sale, Walsh purported to unilaterally rescind the loan transaction, although she does not allege that she tendered repayment of monies borrowed against the property, or amounts to account for the fair rental value of the property during the period of the loan.

In 2011, an assignment of the Deed of Trust was recorded, signed by an agent of Cal-Western. The foreclosure sale took place soon after, purportedly with many irregularities. Eventually, Walsh was "dispossessed of her home," presumably by an eviction action.

As to each set of respondents, the trial court took judicial notice of documents described by or alluded to in the complaint but not attached thereto, including the 2006 Deed of Trust, a 2008 Substitution of Trustee, the Notice of Default, the Notice of Trustee's Sale, the Assignment of the Deed of Trust, and the Trustee's Deed Upon Sale.[2]

The Deed of Trust recorded January 6, 2006, states the loan amount was $1,000,000. Walsh, although described as married, was the sole named borrower. The lender was "National City Mortgage a division of National City Bank of Indiana . . . National Banking Association." The trustee was "National City Bank of Indiana." The document provided that the note could be sold one or more times without prior notice to Walsh, but if the servicer of the loan changed Walsh would be given notice of where to send future payments on her outstanding obligation.

The Notice of Default, recorded on June 20, 2008, alleges over $24,000 was in arrears as of June 19, 2008. This document has a signature line with a heading for Cal-

---

[2] Walsh lists the propriety of judicial notice as one of her "Issues Presented" on appeal, but fails to head and argue the point, therefore it is forfeited. (See *Live Oak Publishing Co. v. Cohagan* (1991) 234 Cal.App.3d 1277, 1291.)

Western, with "Trustee" handwritten over the name, and "By: First American, As Agent" stamped under the name, and is signed by one "Vangie Ortega."

The Substitution of Trustee, signed June 19, 2008, but not recorded until August 2008, *after* the recording of the Notice of Default, had named Cal-Western as the new trustee. This document has two notarized signatures of persons purporting to act for "National City Mortgage A Division of National City Bank [formerly known as] National City Bank of Indiana." Attached is an Affidavit of Mailing Substitution of Trustee, declaring a copy of the Substitution of Trustee had been sent "to all persons to whom a copy of the Notice of Default would be required to be mailed" as required by Civil Code section 2934a[3], with a notarized signature of a person purporting to act for Cal-Western.

The Notice of Trustee's Sale, recorded in December 2010, states the balance due with costs was over $1,224,000. An attachment alleges there were at least 57 attempts to contact Walsh by telephone, and at least one letter was sent to advise her of options to avoid foreclosure, as required by section 2923.5, subdivision (c).

The Assignment of Deed of Trust recorded in March 2011 assigned to MTGLQ all interest in the Deed of Trust. It is signed by an employee of "PNC Mortgage A Division of PNC Bank, NA," as a successor bank by merger. The Trustee's Deed Upon Sale, recorded in April 2011, conveyed the property to MTGLQ.

**DISCUSSION**

I

*Standard of Review and Walsh's Pro Per Status*

A demurrer tests the sufficiency of the pleadings to state a cause of action, which raises a purely legal question reviewed de novo. " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact

---

[3] Further undesignated statutory references are to the Civil Code.

4

or law. [Citation.] We also consider matters which may be judicially noticed."

[Citation.] Further, we give the complaint a reasonable interpretation, reading it as a

whole and its parts in their context. [Citation.] When a demurrer is sustained, we

determine whether the complaint states facts sufficient to constitute a cause of action.' "

(*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 (*Zelig*).)

Contrary to her claim, Walsh's choice to proceed without counsel in this ordinary

civil dispute does not entitle her to special treatment. (See *Rappleyea v. Campbell* (1994)

8 Cal.4th 975, 984-985; *McNeil v. United States* (1993) 508 U.S. 106, 113 [124 L.Ed.2d

21, 28-29] [although some pro se prisoners without access to counsel may be entitled to

lenity in procedural matters, "we have never suggested that procedural rules in ordinary

civil litigation should be interpreted so as to excuse mistakes by those who proceed

without counsel"].) Arguments asserted by Walsh that are not supported by authority and

coherent legal analysis are deemed to be forfeited. (See *In re S.C.* (2006) 138

Cal.App.4th 396, 408.)

The complaint raises a host of legal claims, miscaptioned as separate causes of

action. We deem abandoned all claims raised in the complaint that are not clearly briefed

on appeal. (See *Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 984, fn. 1.)

II

*Wrongful Foreclosure*

Walsh contends she pleaded a viable claim for wrongful foreclosure because she

alleged the trustee could not exercise "a power of sale contained in the deed of trust that

[it was] not authorized to exercise." Further, she alleged she was excused from the need

to tender the amount due on the loan because "the foreclosure proceedings were void and

tender does not apply to void foreclosure proceedings."

A California home loan typically involves a promissory note secured by a deed of

trust in which the debtor (the buyer) is the trustor, the creditor (a bank or other lender) is

the beneficiary, and a neutral third party acts as the trustee. (See *Nguyen v. Calhoun*

5

(2003) 105 Cal.App.4th 428, 438.) When a debtor defaults, the creditor has the right to invoke the power of sale provided by the deed of trust. (§ 2924, subd. (a).) Sections 2924 through 2924k provide a comprehensive and exhaustive framework to exercise the power of sale in the deed of trust. (See *Nguyen*, at p. 440; *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830-832, 834.)

As Walsh acknowledges, the general rule is that tender of arrearages is required before a party can attack a foreclosure sale. (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 526 (*Stebley*); *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109.) "Allowing plaintiffs to recoup the property without full tender would give them an inequitable windfall, allowing them to evade their lawful debt." (*Stebley*, at p. 526.)

But Walsh correctly points out that tender is not required either when it would be inequitable to require forfeiture, or when a foreclosure sale is void. (See *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 290-291 (*Humboldt*) [inequitable to require a party *not liable on the entire debt triggering the foreclosure* to tender the amount of the entire debt in order to protect her own *separate* interest in the property by acting to set aside a wrongful foreclosure]; *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 113-114 [tender not required where "trustee's deed is void on its face"].) Although Walsh repeatedly characterizes the foreclosure as void, in reviewing a complaint as against a demurrer we accept as true pleaded *facts*, not conclusions of law. (See *Zelig*, *supra*, 27 Cal.4th at p. 1126.) Accordingly, we first discuss whether the foreclosure sale is void.

A. *Voidness to Excuse Tender*

" 'As a general rule, there is a common law *rebuttable* presumption that a foreclosure sale has been conducted regularly and fairly.' [Citations.] Accordingly, '[a] successful challenge to the sale requires evidence of a failure to comply with the procedural requirements for the foreclosure sale that caused prejudice to the person attacking the sale.' " (*6 Angels Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85

6

Cal.App.4th 1279, 1284 (*6 Angels*); see *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1259; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 96.) It is not sufficient to allege the *legal conclusion* that the sale was "void," Walsh has a duty to allege facts and coherent legal arguments showing *how* the sale was void. (Cf. *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1358-1361 [sale void, not merely voidable, where *no* notice was given "to the trustor, the junior lienor, and the judgment creditor"; complete lack of notice "clearly substantial and prejudicial"]) Her failure to provide coherent legal arguments to support her claims of a void sale forfeits those claims. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.)

Further, Walsh has not alleged any prejudicial infirmities in the foreclosure sale.

Liberally construing Walsh's opening brief, she argues the sale was void because: (1) the trustee was not authorized to exercise the power of sale; (2) statutory requirements for noticing and conducting the sale were not followed; (3) the trustee lacked the power to foreclose for lack of default; and in three closely-related claims contends (4) the beneficiary did not approve the substitution of trustee, the substitution was signed by so-called "robosigners," and no proper notice of the substitution was made.

### 1. *Exercising the Power of Sale*

Walsh contends the trustee lacked the power of sale in the deed of trust. It appears she is arguing that the transfer of her note "on multiple occasions" means no respondent is the "lawfully appointed" trustee, and in particular Cal-Western did not have the power to foreclose. This is in part because although it had been appointed as successor trustee, it recorded the Notice of Default *before* the Substitution of Trustees had been recorded.

The short answer to this point is that Walsh lacks standing to challenge any failure of authorization of the entity exercising the power of foreclosure. "The recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose

7

of delaying valid foreclosures." (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155; see *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82 (*Siliga*).)

Moreover, the recorded Substitution of Trustee of which the trial court took judicial notice clearly named "Cal-Western Reconveyance Corporation" as the new trustee. "By statute the Legislature has permitted the beneficiary of a deed of trust to substitute, at any time, a new trustee for the existing trustee. Under the governing statute the substitution is made by simply recording a document evidencing the substitution. ([] § 2934a, subd. (a).) By its terms the statute provides that after such a substitution has been recorded, 'the new trustee shall succeed to all the powers, duties, authority, and title granted and delegated to the trustee named in the deed of trust.' (§ 2934a, subd. (a)(4).) [¶] Other than by recording a further substitution there are no other statutory means by which the effect of a substitution, once recorded, may be avoided." (*Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 871; see *id.* at pp. 874-875.)

Further, the fact that Cal-Western recorded the Notice of Default before the Substitution of Trustee had been recorded was not improper. Any agent of the named trustee or beneficiary is authorized to record a Notice of Default (§ 2924b, subd. (b)(4)), and Cal-Western had been nominated as the substitute trustee before recording the Notice of Default, although the formal Substitution of Trustee occurred later. In the meantime, Cal-Western was at the very least acting as the agent of the prior named trustee.

### 2. *Noticing and Conducting the Sale*

Walsh contends the trustee did not follow statutory procedures for noticing and conducting the foreclosure sale. She asserts section 2924 was not complied with, but does not explain how that statute was violated. Although she argues that all the necessary facts "are found in" the first amended complaint, it is improper to incorporate facts from trial court pleadings. It was incumbent on Walsh, as the appellant, to explain in her briefing what facts alleged in the operative complaint support any of her claims. (See

8

*Garrick Development Co.* v. *Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 334; *Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 153-154.)  Accordingly, this point is forfeited.

Moreover, the portion of the complaint Walsh references in her briefing asserts she "rescinded" the loan transaction, thereby undermining any power to conduct a foreclosure sale.  But she has failed to allege that she offered to give back to respondents the benefits she achieved through the loan contract.  A rescinding party must "[r]estore to the other party everything of value which he has received from him under the contract or offer to restore the same."  (§ 1691, subd. (b).)  In other words, Walsh is again thwarted by her failure to tender.  She has given no explanation how her purported rescission could be effectual, and we see none.

### 3. *Default*

Walsh contends she was *not* in default, by citing a case holding a sale was invalid where the debtor was not in default.  (See *Bank of America v. La Jolla Group II* (2005) 129 Cal.App.4th 706, 711-712 [default had been cured by agreement of the trustor and beneficiary before the sale, therefore the sale was invalid].)  However, Walsh does not point to any allegation in the complaint alleging she was current on her loan, and in her briefing concedes she has not tendered the amounts due.  We treat that concession as binding.  (See *County of El Dorado v. Misura* (1995) 33 Cal.App.4th 73, 77; *Federer v. County of Sacramento* (1983) 141 Cal.App.3d 184, 186.)

### 4. *Substitution of Trustees*

Walsh contends the alleged substitution of the trustee without approval by the beneficiary or notice to her, and purportedly by means of "robosigners," was improper.[4]  In her view, this makes the substitution of trustee void.

---

[4] We understand the term "robo signing" to refer to the practice of signing multitudes of property record documents without any authority.

9

First, whether or not any documents were robo-signed is of no moment, because Walsh concedes she has not tendered the amounts due, nor explained how the activity she challenges impaired her ability to cure her default. (See *Bergman v. Bank of Am., N.A.* (N.D.Cal. Oct. 23, 2013, No. C-13-00741 JCS) 2013 U.S. Dist. Lexis 153173, pp. *49-51 [collecting cases]; *Maynard v. Wells Fargo Bank, N.A.* (S.D.Cal., Sept. 11, 2013, No. 12CV1435 AJB) 2013 U.S. Dist. Lexis 130800, pp. *24-28.) Assuming for argument's sake that the substitution of trustee was somehow improper, the document or assignment, at best, is *voidable* at the election of the owner of the note, not void. (See *Mortgage Associates, Inc. v. Fidelity & Deposit Co. of Maryland* (2002) 105 Cal.App.4th 28, 38, fn. 5.) Because Walsh was in default, and does not allege any impropriety impaired her ability to cure her default, she has no standing to complain. (See *Siliga*, *supra*, 219 Cal.App.4th at p. 85; *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507-1508; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272 ["If MERS . . . lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note"]; see also *Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 232 ["Neither [] section 2934a, which governs the substitution of trustees, nor the trust deed itself precludes an attorney-in-fact from signing a substitution of trustee"; "The notice of default was recorded by the properly designated trustee, and the notice did not have to identify the beneficiary"].)

Further, the deed of trust provides that Walsh would be given notice of any change of *servicers* of the loan, so she would know where to send her payments, but recited that the note could be sold multiple times without prior notice to Walsh. Her loan documents did not provide for notice to her (or right of approval over) any other changes, including the substitution of Cal-Western as the new trustee.

B.  *Equitable Reasons to Excuse Tender*

As for *equity*, there is no allegation that the loan underlying the foreclosure was not incurred by Walsh, therefore we see no inequity in requiring tender.  (Cf. *Humboldt*, *supra*, 161 Cal. at pp. 290-291.)  " 'It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid. . . .  [A] commercial lender is privileged to pursue its own economic interests and may properly assert its contractual rights.' "  (*Stebley*, *supra*, 202 Cal.App.4th at p. 528, quoting *Sierra-Bay Fed. Land Bank Assn. v. Superior Court* (1991) 227 Cal.App.3d 318, 334-335.)

C.  *Conclusion as to Tender*

We are left with the unrebutted legal presumption that a foreclosure sale was conducted properly.  (See *6 Angels*, *supra*, 85 Cal.App.4th at p. 1284; *Knapp v. Doherty*, *supra*, 123 Cal.App.4th at p. 96.)  Thus tender was required to pursue a claim for wrongful foreclosure.  Therefore the trial court properly sustained the demurrer as to claims alleging wrongful foreclosure.

## III

### *Remaining Contentions*

A.  *Declaration of Rights*

Walsh contends she alleged an active controversy as to ownership of the property, and therefore she was entitled to a declaration of rights.

" 'Declaratory relief operates prospectively, serving to set controversies at rest.  If there is a controversy which calls for a declaration of rights, it is no objection that past wrongs are also to be redressed; but there is no basis for declaratory relief where only past wrongs are involved.  Hence, where there is an accrued cause of action for an actual breach of contract or other wrongful act, declaratory relief may be denied.' "  (*Baldwin v. Marina City Properties, Inc.* (1978) 79 Cal.App.3d 393, 407.)

Here, we fail to see any real controversy as to title.  The property was sold at a foreclosure sale.  Walsh lacks standing to challenge the foreclosure sale for lack of

11

tender, as we explained above. The sale therefore "constitutes a final adjudication of the rights of the borrower and lender." (*Moeller v. Lien*, *supra*, 25 Cal.App.4th at p. 831; see *California Ins. Guarantee Assn. v. Superior Court* (1991) 231 Cal.App.3d 1617, 1623-1624 [declaratory relief may be denied where it seeks duplicative relief].)

B. *Setting Aside the Trustee's Sale*

Walsh contends she pleaded grounds to set aside the trustee's sale, because she alleged noncompliance with section 2924, and because respondent Cal-Western lacked the power to foreclose.

We have already addressed and rejected these claims *ante*.

C. *Cancellation*

Walsh contends she pleaded a good claim for cancellation of instruments, replicating her claim that the substitution of trustee was void "because it was not fully acknowledged and executed by the beneficiary." Therefore, she reasons, the foreclosure based on that substitution, too, is void.

We have already addressed and rejected her contention that the substitution was invalid. Thus the predicate of her cancellation claim fails.

D. *Quiet Title*

Walsh next contends she is entitled to the *remedy* of quiet title. Because we have not discerned any actionable flaw in the foreclosure proceedings, this claim fails. It fails separately for lack of tender. "A borrower may not . . . quite title against a secured lender without first paying the outstanding debt on which the . . . deed of trust is based." (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86; see *Shimpones v. Stickney* (1934) 219 Cal. 637, 649 ["a mortgagor cannot quiet his title against the mortgagee without paying the debt secured"]; *Kelley v. Mortgage Electronic Registration Systems, Inc.* (N.D. Cal 2009) 642 F.Supp.2d 1048, 1057 ["Plaintiffs have not alleged . . . that they have satisfied their obligations under the Deed of Trust. As such, they have not stated a claim to quiet title"].)

12

E.  *Fraud*

Walsh contends she adequately pleaded a fraud cause of action.

"The essential allegations for an action in fraud or deceit are false representation as to a material fact, knowledge of its falsity, intent to defraud, *justifiable* reliance and resulting damage." (*Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331.)  "While . . . plaintiff's pleading must be taken as true [citation], the allegations in a fraud action need not be liberally construed.  [¶]  Instead, fraud must be specifically pleaded.  This means: (1) general pleading of the legal conclusion of fraud is insufficient; and (2) every element of the cause of action for fraud must be alleged in full, factually and specifically, and the policy of liberal construction of pleading will not usually be invoked to sustain a pleading that is defective in any material respect.  [Citation.]  'It is bad for courts to allow and lawyers to use vague but artful pleading of fraud simply to get a foot in the courtroom door.' "  (*Ibid*.; see *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 793; *Perlas v. GMAC Mortgage, LLC* (2010) 187 Cal.App.4th 429, 434 (*Perlas*); *Tarmann v. State Farm Mut. Auto Ins. Co.* (1991) 2 Cal.App.4th 153, 157 (*Tarmann*) ["The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written"].)

Walsh's briefing does not clearly explain how her complaint alleges a good claim of fraud.  She makes or rehashes vague complaints about the handling of her loan by the various respondents and their employees, but fails to articulate with specificity what knowingly false statements induced her justifiable reliance, causing her damage.  This is fatal to her claim.  (See *Tarmann*, *supra*, 2 Cal.App.4th at p. 157.)

F.  *Breach of Fiduciary Duty*

Walsh contends she adequately pleaded breach of fiduciary duty.  To the contrary, it is well-settled that commercial lenders--or their agents and assignees--do not owe

13

fiduciary duties to borrowers. Instead, lenders and borrowers operate at arm's length. (See *Perlas*, *supra*, 187 Cal.App.4th at p. 436; *Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 466; *Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1093, fn. 1.) Further, as we noted earlier, a commercial lender may properly assert its contractual rights. (See *Stebley*, *supra*, 202 Cal.App.4th at p. 528.)

Accordingly, no breach of fiduciary duty is pleaded.

G. *Accounting*

Walsh contends she pled entitlement to an accounting.

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting. [Citations.] [¶] An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation." (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179.)

Walsh does not explain what relationship between her and respondents requires any accounting. Because we hold the foreclosure sale stands for lack of tender, that "puts a definitive end to [Walsh's] efforts to hold respondents accountable as constructive trustees or in any other fashion." (*Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 121.) Further, Walsh has not explained why any amounts allegedly due to her could not be "made certain by calculation." (*Teselle v. McLoughlin*, *supra*, 173 Cal.App.4th at p. 179.)

Therefore, Walsh has not established her right to relief via an accounting.

H. *Authority of the Court Commissioner*

For the first time in her reply brief, Walsh argues that the court commissioner lacked authority to rule on the demurrer because she did not stipulate to allow him to do so. Because Walsh did not head and argue this issue in the argument section of her

14

opening brief, the claim is forfeited as untimely.  (See *Utz v. Aureguy* (1952) 109 Cal.App.2d 803, 808.)

Moreover, the record has been augmented to show that before the demurrer, the commissioner heard and granted Walsh's motion to set aside a dismissal.  Further, Walsh appeared at a later case management conference before him, the minutes of which contain a check in the box marked "Stipulated to Comm./Pro Tem in open court."  Therefore, as the commissioner ruled, her claim is untenable.

A subordinate judicial officer may serve as a temporary judge upon the stipulation of the "parties litigant."  (Cal. Const., art. VI, § 21; Code Civ. Proc., § 259, subd. (d).)  The stipulation may be explicit or implied by conduct.  (*Foosadas v. Superior Court* (2005) 130 Cal.App.4th 649, 652.)  By allowing the commissioner to hear her set-aside motion, Walsh impliedly stipulated to allow him to hear all matters other than trial.  (See Placer Co. Super. Ct. Rules, rule 20.2(B) [failure to file notice of non-stipulation at least five days before a motion hearing "deemed a stipulation to the Commissioner as temporary judge . . . *for all purposes other than trial*" (italics added)].)

In her reply brief, Walsh disputes the type of hearing and her appearance thereat and claims minute orders "can't be fully relied on."  Absent any reason to believe *this* minute order is inaccurate, we presume it is correct.  (See Evid. Code, § 664; *Smith v. Smith* (1958) 157 Cal.App.2d 658, 662.)  We further observe that Walsh has not shown that she took any steps to correct it, if indeed she believed it to be incorrect.  It shows she *explicitly* stipulated in open court to allow the court commissioner to act as a temporary judge.  Further, whether or not Walsh personally appeared at the earlier hearing, she acquiesced in the commissioner's action on her motion to set aside the default, *impliedly* stipulating to allow him so to act.

I.  *Leave to Amend*

Throughout her briefing, Walsh contends the trial court should have granted her leave to amend, and she correctly contends that amendments may be proposed for the

15

first time on appeal.  (See *Connerly v. State of California* (2014) 229 Cal.App.4th 457, 460.)  However, Walsh must "show in what manner [she] can amend [her] complaint and how that amendment will change the legal effect of [her] pleading."  (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636; see *Schultz v. Steinberg* (1960) 182 Cal.App.2d 134, 140-141.)

Walsh fails to articulate what facts she would add that would alter our legal conclusions.  Therefore, no basis for leave to amend is shown.

## DISPOSITION

The judgments are affirmed.  Walsh shall pay all respondents' costs of this appeal. (See Cal. Rules of Court, rule 8.278(a)(2).)


      DUARTE      , J.


We concur:


      HULL      , Acting P. J.


      MAURO      , J.